CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
Jonathan K. Ogata (Bar No. 325914)
(E-Mail: Jonathan_Ogata@fd.org)
Deputy Federal Public Defender
411 West Fourth Street, Suite 7110
Santa Ana, California 92701-4598
Telephone: (714) 338-4500
Facsimile: (714) 338-4520

Attorneys for Defendant
Edward Kim

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

EDWARD KIM,

Defendant.

Case No. 21-CR-00041-JVS

**DEFENDANT'S PARTIAL OPPOSITION TO GOVERNMENT'S EX PARTE APPLICATION FOR A PROTECTIVE ORDER REGARDING DISCOVERY CONTAINING PERSONAL IDENTIFYING INFORMATION**

Defendant Edward Kim, by and through his counsel, Deputy Federal Public Defender Jonathan K. Ogata, files this partial opposition to the government's ex parte application for a protective order regarding discovery. Also filed herewith is an alternative proposed form of a protective order reflecting Mr. Kim's proposed modifications to the government's proposed protective order.

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 1

II. THE GOVERNMENT SHOULD NOT BE PERMITTED TO REDACT PII FROM CONFIDENTIAL INFORMATION PRODUCED PURSUANT TO THE PROTECTIVE ORDER ..... 2

III. THE COURT SHOULD REJECT THE PROPOSED REQUIREMENT THAT MR. KIM OBTAIN HIS ADVERSARY'S WRITTEN PERMISSION BEFORE COMMUNICATING WITH MEMBERS OF HIS DEFENSE TEAM. ..... 3

IV. REQUIRING WITNESSES TO SIGN THE PROTECTIVE ORDER IS UNNECESSARY AND WILL UNDULY HINDER THE DEFENSE; A VERBAL AGREEMENT IS SUFFICIENT. ..... 7

V. PARAGRAPH 6(O) IS A CONVOLUTED AND REQUIREMENT WITH A PUZZLING RESULT AND SHOULD BE STRICKEN. ..... 9

VI. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*United States v. Albertson*, No. 18-cr-712-DMG ........ 8

*United States v. Barrow*, No. 20-cr-563-VAP ........ 8

*United States v. Cisneros*, No. 18-cr-875-JAK ........ 8

*United States v. Danielson*, 325 F.3d 1054, 1066 (9th Cir. 2003) ........ 4

*United States v. Ellis-Strong*, 20-cr-486-FMO ........ 8

*United States v. Garcia*, 20-CR-225-DSF ........ 8

*United States v. Triefenbach*, No. 21-133-JVS, ECF No. 31 (C.D. Cal. Dec. 13, 2021) ........ 1, 8

*United States v. Walsh*, No. 21-cr-68-SB ........ 8

*United States v. Zavala*, No. 19-cr-676-FMO ........ 8

**United States Supreme Court Case**

*Hickman v. Taylor*, 329 U.S. 495, 510 (1947) ........ 6

**District Court Cases**

*Martinez v. Procunier*, 354 F. Supp. 1092, 1098 (N.D. Cal. 1973) ........ 6

*Sonza v. Travisono*, 368 F. Supp. 959 (D.R.I. 1973) ........ 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The defense recognizes and generally does not object to the appropriateness of a protective order in this case. But any protective order must balance Mr. Kim's right to due process against any risk surrounding disclosure of protected materials. The government's proposed protective order in this case runs afoul of this balance, creating a cumbersome and unduly burdensome structure for dealing with sensitive information. In order to remedy this imbalance the defense objects to several of the terms contained in the protective order advanced by the government and proposes the attached modified version of the protective order. Specifically, the defense objects to 1) the proposed provision permitting redaction of Personal Identifying Information ("PII") within material already governed by protective order; 2) the unnecessary requirement that Mr. Kim may only review Confidential Information ("CI") in the presence of defense counsel or members of the defense team pre-cleared by the government in writing; 3) the requirement that any witnesses shown CI agree in writing to be bound by the terms of the protective order, as opposed to simple verbal agreement; 4) the unclear and serpentine process of redaction for publicly filed materials; and 5) the requirement that CI materials be destroyed within 30 days of the conclusion of proceedings or returned to the government, as opposed to being maintained by counsel in accordance with the California Rules of Professional Conduct.

Indeed, on December 13, 2021, this Court recognized the imbalance many of these provisions create and declined to include them in the Court's protective order. *See United States v. Triefenbach*, No. 21-133-JVS, ECF No. 31 (C.D. Cal. Dec. 13, 2021). The Court's protective order did **not** include 1) the provision permitting government redaction of PII within material already governed by the protective order, 2) the unnecessary requirement that the defendant only review CI in the presence of defense counsel or an *approved* member of the defense team, 3) that any witness shown CI agree

in writing to be bound by the protective order, and 4) the requirement that CI material be destroyed within 30 days of the conclusion of proceedings or returned to the government. *Id*. The Court should do the same here with the additional modification governing publicly filed material outlined below.

## II. The Government Should Not Be Permitted to Redact PII from Confidential Information Produced Pursuant to the Protective Order

The entire purpose of this protective order is to allow the defense to have unredacted copies of materials that contain PII and CI—discovery that the government acknowledges is necessary to the defense, and for which it claims redaction is not practicable. The protective order fully restricts anyone but defense team members from having possession of materials and information produced pursuant to the order. Yet the government nonetheless seeks to retain the ability to redact PII from discovery produced pursuant to the protective order. *See* Gov't Ex Parte Appl. 10–11. The government offers two reasons for the supererogatory redaction requirement: a) the need to protect confidential information, and b) the government's inclination to redact information it unilaterally deems irrelevant. *Id.*

The terms of the order itself already prevent the defense team from disseminating any of the protected materials to anyone outside the defense team, including Mr. Kim. Neither he (nor any witnesses to whom the defense team might show the protected discovery) is authorized to retain any CI, or even to retain notes relating to the CI. Therefore, the only conceivable reason for redacting PII from the protected discovery would be if the government does not trust the defense team to follow its obligations under the protective order, which by its very terms renders redactions unnecessary. Again, the government has no reason to believe that the defense will not follow the terms of the order. Defense counsel is an officer of the Court with experience handling and reviewing such materials, and his team members have extensive experience doing so as well.

Allowing the government to redact PII from a protective order designed to allow the safe production of PII will do nothing but lead to additional litigation, as the defense seeks access to the redacted information. It will create no additional protection for the government, but it certainly will create additional, unnecessary burdens for the defense and the Court. The Court should strike this language from the protective order.

Furthermore, the marginal benefits that would supposedly flow from this restriction are nugatory. Counsel, his team, and Mr. Kim are already bound by the terms of the order to keep CI confidential, and the information disclosed within the CI is likely to be highly sensitive. The order itself is designed to mitigate the risk of unauthorized disclosure. It is therefore a non sequitur to observe, as in the government's first offered justification, that the material sought to be redacted is sensitive. And, as to the government's last offered reason—irrelevance—the government ought not to be the sole arbiter of relevance when the supposedly irrelevant material a) may be relevant and b) will be governed by the strict terms of the protective order.

## III. THE COURT SHOULD REJECT THE PROPOSED REQUIREMENT THAT MR. KIM OBTAIN HIS ADVERSARY'S WRITTEN PERMISSION BEFORE COMMUNICATING WITH MEMBERS OF HIS DEFENSE TEAM.

The government's unduly and needlessly complicated regime for the handling of confidential information comes to a head in sections 6(i) and 6(j). As the government notes, these sections discuss the defendant's access to two types of confidential information—(1) CI and (2) PII. Gov't Ex Parte Appl. 11-12. Defendant may review PII in the presence of anyone on the defense team. ECF No. 22-1 ¶ 6 (a). This makes sense and strikes the proper balance between protection of confidential information and Mr. Kim's rights as a defendant. However, the government disrupts this balance when it creates the novel requirement in paragraph 6(i), which requires government written approval of individuals on the defense team to review CI material with Mr. Kim. *Id*. at ¶ 6(i). Mr. Defendant's access should be the same for PII and CI—allowing Mr. Kim to

review the confidential information with either defense counsel or a member of the defense team, regardless of the government's arbitrary approval of that member.

The proposed order states:

> If defense counsel wishes to enable defendant to review CI Materials in the presence of any person on the Defense Team other than defense counsel, defense counsel shall submit a letter to government counsel of record identifying that person (the "designated person"), and shall submit a copy of this stipulation that has been signed by that designated person. Upon receipt of those materials, if the government, in its sole discretion, finds the designated person acceptable, prior to the designated person reviewing any CI Materials with defendant, government counsel of record will confirm in writing that defendant is additionally allowed to review CI Materials in the presence of the designated person.

Proposed Protective Order, ECF No. 22-1, ¶ 6(i). If entered as written, this provision would require Mr. Kim to seek his adversary's permission in order to review key discovery. The government, in its sole discretion, for any reason or no reason, could prevent Mr. Kim from reviewing discovery with other members of the "defense team," which the protective order defines as other attorneys in the Office of the Federal Public Defender, experts, investigators, paralegals, and support staff. *Id.* ¶ 6(d).

While Mr. Kim appreciates the government's interest in protecting sensitive information, the "very premise of our adversary system of criminal justice is that partisan advocacy on both sides of a case will best promote the ultimate objective that the guilty be convicted and the innocent go free." *United States v. Danielson*, 325 F.3d 1054, 1066 (9th Cir. 2003) (quoting *United States v. Cronic*, 466 U.S. 648, 655 (1984)). A provision that gives the prosecutor arbitrary control over which members of the Office of the Federal Public Defender can work on a particular case is not only unnecessary, it is anathema to the adversarial system.

Additionally, the wholesale delegation to the government of "sole discretion" over which members of the defense team is "acceptable" for a given task is contrary to the Sixth Amendment. For example, in *Sonza v. Travisono*, 368 F. Supp. 959 (D.R.I. 1973), *aff'd*, 498 F.2d 1120 (1st Cir. 1974), the court held that a prison policy prohibiting inmates from meeting with law students violated inmates' due process right to effective access to the courts. In support of its holding, the court highlighted the Sixth Amendment concerns arising from limitations on defense counsel's use, and choice, of agents:

> In circumstances in which a prisoner's Sixth Amendment right to counsel is involved, not only must an attorney be given the broadest possible opportunity to meet and confer with his inmate client but the same right as of necessity filters down to his para-legal assistants. And the right to select such assistant rests with the attorney and not the prison officials. If this were not so it could seriously impair the inmate's Sixth Amendment right. . . . The alter ego status of para-professionals parallels that of the principal whether it be in the exercise of due process access of the court of the fundamental right to the counsel.

*Id.* at 970–71.

The government may argue that if defense counsel wishes to avoid some of the above concerns, counsel may be personally present if and when the need arises for Mr. Kim to review CI materials with a member of the defense team. But this imposes on defense counsel the burdensome obligation of being present for CI discovery review, even when counsel's presence is unnecessary. This, too, raises Sixth Amendment concerns, as well as concerns with respect to Mr. Apodaca's due process right to access of the courts. Unnecessary time spent by counsel during CI discovery review (solely for purposes of complying with the protective order) detracts from time that could be better used preparing other aspects of Mr. Kim's defense. As one court explained:

///

///

> If attorneys of record must interview their clients personally . . . the time spent travelling would necessarily prohibit them from spending as much time working on legal problems.
>
> Conversely, if attorneys can send assistants with detailed instructions to interview inmates, they will have more time available to evaluate the contentions raised and prepare the necessary legal documents. It follows that each inmate-client will receive better legal assistance, thus facilitating his access to the courts. Moreover, attorneys would have more time to serve additional clients who might otherwise have to rely on jailhouse lawyers.
>
> The potential benefits to inmates, attorneys and the courts from permitting attorneys to send law students or other paraprofessionals to interview inmates are obvious.

*Martinez v. Procunier*, 354 F. Supp. 1092, 1098 (N.D. Cal. 1973), *aff'd*, 416 U.S. 396 (1974).

Furthermore, members of the defense team that work for the Office of the Federal Public Defender are federal employees just like members of the United States Attorney's Office. The defense team includes investigators, assistants, and other staff with the Office of the Federal Public Defender (as well as experts). It makes no sense that another branch of the federal government (i.e., the Judiciary) would not be trusted with this information while defense counsel, who works for the same branch, would be. In order for the defense to be able to provide adequate representation, it is essential that it maintains its autonomy from the government. The government has no legitimate need in monitoring when and how the Office of the Federal Public Defender, and supporting staff acting under the direction of an officer of the Court, chooses to provide Mr. Kim representation. *See Hickman v. Taylor*, 329 U.S. 495, 510 (1947) ("In performing his various duties . . . it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel").

Finally, Mr. Kim disagrees with the government's assertion that "[the] procedure [proposed] places minimal burden on defense counsel." Gov't's Ex Parte Appl. 13. Given the extensive allegation in the complaint that likely require disclosure of sensitive material there is likely significant amounts of protected discovery yet to be produced by the government. Mr. Kim accordingly believes a large volume of discovery will be produced under the protective order, making all the greater counsel's need for autonomy in litigating this case.

## IV. Requiring Witnesses To Sign The Protective Order Is Unnecessary and Will Unduly Hinder the Defense; A Verbal Agreement Is Sufficient.

The defense objects to the proposed "in writing" requirement for witnesses at paragraph 6(l) of the government's proposed order because it hampers the defense's ability to investigate and provide effective representation. This is not a minimal burden in the context of counsel's duty; rather it hinders the defense's ability to investigate. The defense has no objection to the defense team advising the witness of the existence of the protective order, and maintaining custody and control of confidential informant information when working with witnesses.

Attempting to speak with a witness can often be a delicate, one-shot opportunity, where a witness may or may not agree to discuss the case. The defense team does not have the persuasive authority of a law enforcement badge as do the government's agents. A witness may be dissuaded or intimidated by being asked to sign a federal court order. Defense counsel should not be forced into the position of potentially being asked to give legal advice to a witness, whom that counsel does not represent, about the legal ramifications of the document defense counsel would have to ask them to sign.

Notably, the proposed protective order does not limit the government's paralegals, legal assistants, and agents as to how they are able to work with confidential information

with witnesses or in any other aspect. The defense should not be subject to any greater burden than the prosecution.

The government puzzlingly claims that "[a]n oral agreement to abide by a Protective Order is virtually unenforceable, thereby functionally obviating the protections that are necessary to protect the safety of a confidential source in the first place." Gov't's Ex Part Appl. 14. By implication, the government believes a requirement that potential witnesses assent in writing makes the protective order more enforceable. Yet any written record obtained or created by the defense would be protected by the work product privilege. The proposed requirement therefore represents no marginal gain in enforceability, but instead a potentially major loss to Mr. Kim's ability to investigate his case. Further, an "in writing" requirement is unnecessary as the witness would never actually have the protected material in his or her possession because the defense team would be bound by the remaining terms of the protective order not to actually give the material to the witness.

Courts in this district, including this Court, have recognized that the disputed language can be replaced with a less restrictive, but still protective, requirement that the witness be advised of the terms of the protective order and agree orally to abide it. The disputed language has appropriately been stricken or modified in other cases in this District. *See, e.g.*, *United States v. Triefenbach*, No. 21-133-JVS (C.D. Cal. Dec. 13, 2021); *United States v. Barrow*, No. 20-cr-563-VAP, ECF No. 42 (C.D. Cal. May 15, 2021); *United States v. Ellis-Strong*, 20-cr-486-FMO, ECF No. 75 (C.D. Cal. June 25, 2021); *United States v. Zavala*, No. 19-cr-676-FMO, ECF No. 27 (C.D. Cal. Apr. 7, 2020); *United States v. Albertson*, No. 18-cr-712-DMG, ECF No. 24 (C.D. Cal. Sept. 3, 2019); *United States v. Cisneros*, No. 18-cr-875-JAK, ECF No. 22 (C.D. Cal. Mar. 13, 2019); *United States v. Walsh*, No. 21-cr-68-SB, ECF No. 28 (C.D. Cal. Apr. 29, 2021); *United States v. Garcia*, 20-CR-225-DSF, ECF Nos. 36, 44, 45, 53, 55, 57, 58 .

Mr. Kim respectfully proposes that the Court amend paragraph 6(l) of the proposed protective order to require that the defense team advise any witness of the terms of the

protective order and obtain the witness's verbal agreement before being shown any protected material, without burdening the defense team to procure a writing.

## V. PARAGRAPH 6(O) IS A CONVOLUTED AND REQUIREMENT WITH A PUZZLING RESULT AND SHOULD BE STRICKEN.

Paragraph 6(o) outlines the following perplexing process "in the event that a party needs to file Confidential Information with Court or…in [a] court filing:" (1) the party need make the filing under seal; (2) if sealing is rejected by court, the party must provide advance written notice to the other party to allow the other party to object or respond; (3) if the other party does not object, the filing party must still redact the confidential information and make all reasonable attempts not to divulge the confidential information. ECF No. 22-1 ¶ 6(o). The perplexing nature of this paragraph becomes clear at step three, where regardless of whether a party objects or does not object, the result is the redaction of confidential information and a requirement to make all reasonable attempts not to disclose confidential information. This begs the question: what happens when the other party does object? Does that party get some relief greater than redaction? The answer is no—redaction is the ultimate remedy and the government's language mandates it regardless of objection.

This paragraph is a serpentine one, where the government has created a meet and confer requirement at step two, with a predetermined result at step three—redaction. This functionally makes meaningless the entire second step of the process, for what is the point of meeting and conferring if the information will, in the end, be redacted? Though it is unclear why this section is composed in this tortuous manner, what is clear is that it need not be so. Rather, the defense proposes the following language, as outlined in the defense proposed protective order attached:

> Absent prior agreement by the parties or permission from the Court, no party shall disclose confidential information in any public filing with the Court. Such materials shall be submitted under seal in accordance with Local Rule

79-5.1. The Clerk of Court shall accept for filing under seal any filings made in compliance with that Rule and so marked by the parties pursuant to this Order.

Defense Proposed Protective Order at ¶ 6(n).

## VI. CONCLUSION

For the foregoing reasons, the Court should modify the proposed protective order consistent with the objections raised by the defense. As noted above, Mr. Kim has included with his opposition a proposed alternative version of the protective order, modified in conformity with Mr. Kim's objections to the government's positions, as recounted herein.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: January 5, 2022

By *_/s/ Jonathan K. Ogata_*
Jonathan K. Ogata
Deputy Federal Public Defender
Attorney for Edward Kim