**F I L E D**
CLERK, U.S. DISTRICT COURT

10/13/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>EDWARD KIM,<br><br>          Defendant. | No. 8:21-CR-00041(A)-JVS<br><br>F I R S T<br>S U P E R S E D I N G<br>I N F O R M A T I O N<br><br>[21 U.S.C. § 846: Conspiracy to Distribute Methamphetamine and Fentanyl; 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii): Distribution of Methamphetamine; 18 U.S.C. § 286: Conspiracy to Defraud the Government With Respect to Claims; 18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1029(a)(3): Possession of Fifteen or More Unauthorized Access Devices; 18 U.S.C. §§ 982 and 1029 and 21 U.S.C. § 853: Criminal Forfeiture] |

     The United States Attorney charges:

1

                                COUNT ONE

2                          [21 U.S.C. § 846]

3    A.   OBJECTS OF THE CONSPIRACY

4         Beginning on a date unknown, but on or before January 3, 2018,

5    and continuing at least through March 3, 2021, in Los Angeles County,

6    within the Central District of California, and elsewhere, defendant

7    EDWARD KIM, together with others known and unknown, conspired with

8    each other to knowingly and intentionally distribute at least 50

9    grams of methamphetamine, a Schedule II controlled substance, in

10   violation of Title 21, United States Code, Sections 841(a)(1),

11   (b)(1)(A)(viii), N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl]

12   propanamide ("fentanyl"), a Schedule II narcotic drug controlled

13   substance, in violation of Title 21, United States Code, Sections

14   841(a)(1), (b)(1)(C), and other controlled substances, in violation

15   of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C).

16   B.   MANNER AND MEANS OF THE CONSPIRACY

17        The objects of the conspiracy were to be accomplished, in

18   substance, as follows:

19        1.   Defendant KIM would arrange the sale of methamphetamine,

20   fentanyl, and other controlled substances to co-conspirators in

21   Hawaii and elsewhere, for further distribution.

22        2.   Defendant KIM would ship methamphetamine, fentanyl, and

23   other controlled substances via the mail, or other common carrier,

24   including under the business name of "Clear Point Logistics," to co-

25   conspirators in Hawaii and elsewhere, for further distribution.

26        3.   The co-conspirators in Hawaii and elsewhere would then

27   transmit funds back to defendant KIM in return for the

28   methamphetamine, fentanyl, and other controlled substances.

                                     2

C.   <u>OVERT ACTS</u>

In furtherance of the conspiracy and to accomplish its objects, on or about the following dates, defendant KIM, and others known and unknown, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

<u>Overt Act No. 1:</u>   On or about November 15, 2019, defendant KIM sent a package containing approximately 449.6 grams of methamphetamine via Federal Express to "Clear Point Logistics" at the address of a UPS Store in Kailua-Kona, Hawaii ("Package 1").

<u>Overt Act No. 2:</u>   On or about November 16, 2019, defendant KIM sent a package containing fentanyl via Federal Express to "Clear Point Logistics" at the address of a UPS Store in Kailua-Kona, Hawaii ("Package 2").

<u>Overt Act No. 3:</u>   On or about November 18, 2019, defendant KIM texted screenshots of the Fed Ex tracking numbers for Package 1 and Package 2, which contained the shipment information and estimated delivery date and time for both packages, to Co-conspirator 1 in Hawaii.

<u>Overt Act No. 4:</u>   On or about November 18, 2019, Co-Conspirator 1 texted defendant KIM to inquire how to send defendant KIM funds to pay for the drugs in Package 1 and Package 2.

<u>Overt Act No. 5:</u>   On or about November 18, 2019, defendant KIM responded to Co-Conspirator 1's text message and instructed Co-Conspirator 1 on how to transfer money to defendant KIM for the drugs contained in Package 1 and Package 2.

<u>Overt Act No. 6:</u>   On or about November 18, 2019, Co-Conspirator 1 arrived at the UPS Store in Kailua-Kona, Hawaii and

3

picked up Package 1 with the intent to transport Package 1 to additional co-conspirators in Hawaii.

Overt Act No. 7:    On or about June 22, 2020, defendant KIM caused "Clear Point Logistics LLC" to be incorporated as a Limited Liability Company in the State of California.

Overt Act No. 8:    On or about July 16, 2020, defendant KIM, on behalf of Clear Point Logistics LLC, rented a warehouse, located at 1301 S. Beach Boulevard, Unit E, La Habra, California 90631.

Overt Act No. 9:    On or about November 15, 2020, defendant KIM attempted to mail a package containing Alprazolam from Clear Point Logistics to an individual in Colorado.

Overt Act No. 10:    On or about March 3, 2021, defendant KIM possessed approximately 295.62 grams of methamphetamine at the warehouse located at 1301 S. Beach Boulevard, Unit E, La Habra, California 90631, as well as approximately 34.93 grams of methamphetamine and 1.17 grams of fentanyl in his apartment in Los Angeles, California, and 12.12 grams of methamphetamine in his automobile in Los Angeles, California.

COUNT TWO

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii)]

On or about November 15, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendant EDWARD KIM knowingly and intentionally distributed at least 50 grams, that is, approximately 449.6 grams, of methamphetamine, a Schedule II controlled substance.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COUNT THREE

[18 U.S.C. § 286]

A.   OBJECT OF CONSPIRACY

    1.   Beginning on a date unknown, but on or before March 27, 2020, and continuing through on or about March 3, 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant EDWARD KIM, together with others known and unknown, knowingly conspired to defraud the United States by obtaining and aiding to obtain the payment and allowance of false, fictitious, and fraudulent claims.

B.   THE MANNER AND MEANS OF THE CONSPIRACY

    2.   The object of the conspiracy was carried out, and to be carried out, in substance as follows:

        a.   Defendant KIM, together with others known and unknown, would obtain the names and social security numbers of individuals without their knowledge and consent (the "identity theft victims").

        b.   Defendant KIM, together with others known and unknown, would then prepare false and fraudulent federal income tax returns, IRS Forms 1040, in the names of identity theft victims (the "Fraudulent Federal Returns"), using the falsified information.  The Fraudulent Federal Returns would include false, fictitious, and fraudulent claims in order to qualify for Economic Impact Payments ("EIP").

        c.   Defendant KIM, together with others known and unknown, would often report fake mailing addresses, email addresses, and bank accounts for the identity theft victims on the Fraudulent Federal Returns, including mailing addresses, email address, and bank accounts that defendant KIM or others controlled.

6

d.     Defendant KIM, together with others known and unknown, would report in the Fraudulent Federal Returns banks accounts that defendant KIM or his co-conspirators controlled, as the accounts to which the electronic EIP should be made.

e.     Defendant KIM, together with others known and unknown, would then file and cause to be filed with the IRS the Fraudulent Federal Returns.  The IRS would then, as directed by the Fraudulent Federal Returns, electronically deposit the claimed EIP to the bank accounts listed in the Fraudulent Federal Returns, which defendant KIM, and others known and unknown, controlled.

f.     Through the conspiracy described above, defendant KIM, together with others known and unknown, caused at least 297 Fraudulent Federal Returns to be filed with the IRS, which sought fraudulent EIPs of more than $356,400 from the United States.

C.     OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

3.     On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendant KIM, together with others known and unknown, knowingly filed and caused to be filed with the IRS Fraudulent Federal Returns in the names of the following identity theft victims, within the Central District of California and elsewhere:

| DATE FILED | VICTIM | TAX YEAR | CLAIMED EIP |
|---|---|---|---|
| April 15, 2020 | G.H. | 2019 | $1,200 |
| April 15, 2020 | H.S.K. | 2019 | $1,200 |

COUNTS FOUR AND FIVE

[18 U.S.C. §§ 1341, 2]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this First Superseding Information:

1.   California's Employment Development Department ("EDD") was the administrator of the unemployment insurance ("UI") benefits program for the State of California.

2.   On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act.  As a result, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which the President signed into law on March 27, 2020.  The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

3.   Prior to the enactment of the CARES Act, to be eligible for UI benefits administered by EDD, a person had to have been employed and worked in California and received at least a certain amount of wages from an employer in the 18 months preceding his/her UI benefits claim.  Because of this requirement, self-employed workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

4.   The CARES Act established a new program — Pandemic Unemployment Assistance ("PUA") — to provide UI benefits during the COVID-19 pandemic to people who did not qualify for regular UI benefits, including business owners, self-employed workers, independent contractors, and those with a limited work history, who were out of business or had significantly reduced their services as a

8

direct result of the pandemic.  UI benefits provided under the PUA program were sometimes referred to as PUA benefits.

5.    Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by EDD if he/she previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

6.    Persons applying for PUA benefits did not need to submit any supporting documents to EDD with their applications.  Claimants reported their total income for the 2019 calendar year on the application.  The stated income was used to calculate the benefits to be paid, which were at least $167 per week.

7.    A PUA benefits claimant was required to answer various questions on his/her application to establish his/her eligibility for the benefits.  The claimant was required to provide his/her name, Social Security Number, and mailing address.  The claimant was also required to identify a qualifying occupational status and COVID-19 related reason for being out of work.

8.    After it accepted an application for UI benefits, including an application submitted pursuant to the PUA program, EDD typically deposited UI funds every two weeks to an Electronic Bill Payment ("EBP") debit card administered by Bank of America ("BofA"), which the claimant could use to pay for his/her expenses.  The EBP debit card was mailed via the United States Postal Service from BofA to the claimant at the address the claimant provided as his/her mailing address on his/her UI benefits application.

B.    THE SCHEME TO DEFRAUD

9.    Beginning no later than May 2020 and continuing through at least March 2021, in Los Angeles and Orange Counties, within the Central District of California, and elsewhere, defendant EDWARD KIM, together with others known and unknown, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud EDD and the United States Treasury as to material matters, and to obtain money and property from EDD and the United States Treasury, namely, UI benefits, including PUA benefits, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

10.    The fraudulent scheme operated, in substance, as follows:

a.    Defendant KIM and his co-schemers filed and caused to be filed with EDD fraudulent applications for UI benefits in the names of other persons, including persons who had not authorized defendant KIM and his co-schemers to file such applications on their behalf or use their names and other identifying information on such applications.

b.    Defendant KIM and his co-schemers falsely stated and represented, and caused to be falsely stated and represented, on the UI benefits applications that were filed with EDD that the named claimants' employment had been negatively affected by the COVID-19 pandemic, thereby triggering eligibility for UI benefits under the PUA provision of the CARES Act.

c.    Defendant KIM and his co-schemers falsely stated and represented, and caused to be falsely stated and represented, on the UI benefits applications that were filed with EDD that the named claimants resided and worked in the State of California, including in

10

1   Los Angeles and Orange Counties, within the Central District of
2   California.

3          d.   By falsely stating that the named claimants had worked
4   in the State of California, defendant KIM and his co-schemers falsely
5   represented and caused to be falsely represented that the named
6   claimants were eligible for UI benefits administered by EDD when, as
7   defendant KIM then knew, they were not eligible for such benefits.

8          e.   As a result of the fraudulent UI benefits applications
9   that defendant KIM and his co-schemers filed and caused to be filed,
10  EDD authorized BofA to issue EBP debit cards in the names of the
11  named claimants.

12         f.   To ensure that they received the UI benefits that were
13  paid as a result of the fraudulent applications, defendant KIM and
14  his co-schemers listed and caused to be listed on the applications
15  for the UI benefits addresses to which they had access as the mailing
16  addresses for each of the named claimants.  Defendant KIM knew that,
17  by doing so, defendant KIM and his co-schemers would cause BofA to
18  mail the EBP debit cards issued to the named claimants to these
19  addresses, thereby enabling defendant KIM and his co-schemers to take
20  possession of the EBP debit cards.

21         g.   After defendant KIM received the EBP debit cards
22  issued as a result of the fraudulent UI benefits applications that he
23  and his co-schemers submitted and caused to be submitted to EDD,
24  defendant KIM used the debit cards and caused the debit cards to be
25  used to withdraw the UI benefits loaded onto the debit cards by
26  making cash withdrawals at Automated Teller Machines and at banking
27  centers, and using the debit cards to pay for purchases of goods and
28  services.

11.   Through this scheme, defendant KIM and his co-schemers caused at least approximately 459 fraudulent applications for PUA benefits to be filed with EDD resulting in intended losses of at least approximately $5,458,050.

C.   <u>USE OF THE MAILS</u>

12.   On or about the dates set forth below, within the Central District of California and elsewhere, defendant KIM and his co-schemers, aiding and abetting each other, for the purpose of executing the above-described scheme to defraud, willfully caused the following items to be placed in an authorized depository for mail matter to be sent and delivered by the United States Postal Service, according to the directions thereon:

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| FOUR | June 5, 2020 | EBP debit card for an account in the name of W.B. ending in 9373 sent by U.S. Mail from BofA to 1039 South Hobart Boulevard, Unit 214, Los Angeles, California 90006 |
| FIVE | July 10, 2020 | EBP debit card for an account in the name of I.H. ending in 9474 sent by U.S. Mail from BofA to 951 South Beach Boulevard, Unit A1012, La Habra, California 90631 |

COUNT SIX

[18 U.S.C. § 1029(a)(3)]

On or about November 15, 2020, in Orange County, within the Central District of California, defendant EDWARD KIM, knowingly and with intent to defraud, possessed at least fifteen unauthorized access devices (as defined in Title 18, United States Code, Sections 1029(e)(1) and (3)), namely, approximately 16 debit cards, all belonging to persons other than defendant KIM, with said possession affecting interstate and foreign commerce.

COUNT SEVEN

[18 U.S.C. § 1029(a)(3)]

On or about March 3, 2021, in Los Angeles County, within the Central District of California, defendant EDWARD KIM, knowingly and with intent to defraud, possessed at least fifteen unauthorized access devices (as defined in Title 18, United States Code, Sections 1029(e)(1) and (3)), namely, over 405 social security numbers, all belonging to persons other than defendant KIM, with said possession affecting interstate and foreign commerce.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FORFEITURE ALLEGATION ONE

[21 U.S.C. § 853]

1.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 21, United States Code, Section 853, in the event of the defendant's conviction on any of the offenses set forth in Counts One through Two of this First Superseding Information.

2.   The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense;

(b)   All right, title and interest in any and all property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense; and

(c)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.   Pursuant to Title 21, United States Code, Section 853(p), the defendant, if so convicted, shall forfeit substitute property if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished

in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. §§ 982 and 1029]

1.     Pursuant to Rule 32.3(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 982(a)(2) and 1029, in the event of the defendant's conviction on any of the offenses set forth in Counts Three through Seven of this First Superseding Information.

2.     The defendant, if so convicted, shall forfeit to the United States of America the following:

(a)   All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offense;

(b)   Any personal property used or intended to be used to commit the offense; and

(c)   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.     Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Sections 982(b)(1) and 1029(c)(2), the defendant, if so convicted, shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the

1   court; (d) has been substantially diminished in value; or (e) has

2   been commingled with other property that cannot be divided without

3   difficulty.

4

5                                        E. MARTIN ESTRADA
                                         United States Attorney
6

7

8                                        SCOTT M. GARRINGER
                                         Assistant United States Attorney
9                                        Chief, Criminal Division

10                                       DAVID T. RYAN
                                         Assistant United States Attorney
11                                       Deputy Chief, General Crimes
                                         Section
12
                                         ANDREW M. ROACH
13                                       Assistant United States Attorney
                                         Cyber & Intellectual Property
14                                       Crimes Section

15                                       JULIA HU
                                         Assistant United States Attorney
16                                       Major Frauds Section

17

18

19

20

21

22

23

24

25

26

27

28