**FILED**
CLERK, U.S. DISTRICT COURT

10/13/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DVE _____ DEPUTY

E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
ANDREW M. ROACH (Cal. Bar No. 293375)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-0306
    Facsimile: (213) 894-2927
    E-mail:    andrew.roach@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>                  v.<br><br>EDWARD KIM,<br><br>             Defendant. | No. 8:21-CR-00041-JVS<br><br>PLEA AGREEMENT FOR DEFENDANT<br>EDWARD KIM |

1.   This constitutes the plea agreement between EDWARD KIM

("defendant") and the United States Attorney's Office for the Central

District of California (the "USAO") in the above-captioned case.

This agreement is limited to the USAO and cannot bind any other

federal, state, local, or foreign prosecuting, enforcement,

administrative, or regulatory authorities.

                    DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

    a.   Give up the right to indictment by a grand jury and,

at the earliest opportunity requested by the USAO and provided by the

Court, appear and plead guilty to Counts One through Seven of a

seven-count superseding information in the form attached to this agreement as Exhibit A or a substantially similar form, which charges defendant with Conspiracy to Distribute Methamphetamine and Fentanyl, in violation of 21 U.S.C. § 846 (Count One); Distribution of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(viii) (Count Two); Conspiracy to Defraud the Government With Respect to Claims, in violation of 18 U.S.C. § 286 (Count Three); Mail Fraud, in violation of 18 U.S.C. § 1341 (Counts Four and Five); and Possession of Fifteen or More Unauthorized Access Devices, in violation of 18 U.S.C. § 1029(a)(3) (Counts Six and Seven).

b.    Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement.

d.    Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.    Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.    Defendant further agrees:

i.    To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived

2

from or acquired as a result of the illegal activity to which defendant is pleading guilty (collectively, the "Forfeitable Assets").

  ii. To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

  iii. To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

  iv. Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

  v. Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

  vi. Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

  vii. To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

1          viii.    To fill out and deliver to the USAO a
2    completed financial statement listing defendant's assets on a form
3    provided by the USAO.

4          ix.    That forfeiture of Forfeitable Assets shall not
5    be counted toward satisfaction of any special assessment, fine,
6    restitution, costs, or other penalty the Court may impose.

7                        THE USAO'S OBLIGATIONS

8    3.    The USAO agrees to:

9          a.    Not contest facts agreed to in this agreement.

10         b.    Abide by all agreements regarding sentencing contained
11   in this agreement.

12         c.    At the time of sentencing, move to dismiss the
13   underlying indictment as against defendant.  Defendant agrees,
14   however, that at the time of sentencing the Court may consider any
15   dismissed charges in determining the applicable Sentencing Guidelines
16   range, the propriety and extent of any departure from that range, and
17   the sentence to be imposed.

18         d.    At the time of sentencing, provided that defendant
19   demonstrates an acceptance of responsibility for the offenses up to
20   and including the time of sentencing, recommend a two-level reduction
21   in the applicable Sentencing Guidelines offense level, pursuant to
22   U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an
23   additional one-level reduction if available under that section.

24         e.    Except for criminal tax violations (including
25   conspiracy to commit such violations chargeable under 18 U.S.C.
26   § 371), not further criminally prosecute defendant for violations of
27   18 U.S.C. § 1028A (Aggravated Identity Theft) arising out defendant's
28   conduct described in the agreed-to factual basis set forth in

                                    4

1   paragraph 33 below or 18 U.S.C. § 924(c) (Carrying a Firearm During,

2   or Possession of a Firearm in Furtherance of, a Drug Trafficking

3   Crime) arising out of the allegations of defendant's possession of a

4   Glock P-80 lookalike gun, bearing no serial number (commonly referred

5   to as a "ghost gun"), as described in the agreed-to factual basis set

6   forth in paragraph 33 below.  Defendant understands that the USAO is

7   free to criminally prosecute defendant for any other unlawful past

8   conduct or any unlawful conduct that occurs after the date of this

9   agreement.  Defendant understands that at the time of sentencing the

10   Court may consider the uncharged conduct in determining the

11   applicable Sentencing Guidelines range, the propriety and extent of

12   any departure from that range, and the sentence to be imposed after

13   consideration of the Sentencing Guidelines and all other relevant

14   factors under 18 U.S.C. § 3553(a).

15        f.   Recommend that defendant be sentenced to a term of

16   imprisonment no higher than the low end of the applicable Sentencing

17   Guidelines range, provided that the offense level used by the Court

18   to determine that range is 35 or higher and provided that the Court

19   does not depart downward in offense level or criminal history

20   category.  For purposes of this agreement, the low end of the

21   Sentencing Guidelines range is that defined by the Sentencing Table

22   in U.S.S.G. Chapter 5, Part A.

23                       NATURE OF THE OFFENSES

24        4.   Defendant understands that for defendant to be guilty of

25   the crime charged in Count One, that is, Conspiracy to Distribute

26   Methamphetamine and Fentanyl, in violation of Title 21, United States

27   Code, Section 846, the following must be true: (1) beginning on an

28   unknown date and continuing through March 3, 2021, there was an

1   agreement between two or more persons to distribute controlled

2   substances, including at least 50 grams of methamphetamine and N-

3   phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide ("fentanyl");

4   and (2) defendant joined in the agreement knowing of its purpose and

5   intending to help accomplish that purpose.

6      5.   Defendant understands that for defendant to be subject to

7   the statutory maximum and statutory minimum sentences set forth below

8   for Count One, the government must prove beyond a reasonable doubt

9   that the conspiracy charged in Count One involved at least 50 grams

10   of methamphetamine and that this type and quantity of drugs fell

11   within the scope of defendant's agreement or was reasonably

12   foreseeable to defendant.   Defendant admits that the charged

13   conspiracy involved at least 50 grams of methamphetamine and that

14   this type and quantity of drugs fell within the scope of defendant's

15   agreement and was reasonably foreseeable to defendant.   Defendant

16   further admits that he, in fact, distributed at least 50 grams of

17   methamphetamine in furtherance of the conspiracy.

18      6.   Defendant understands that for defendant to be guilty of

19   the crime charged in Count Two, that is, Distribution of

20   Methamphetamine, in violation of Title 21, United States Code,

21   Section 841(a)(1), (b)(1)(A)(viii), the following must be true:

22   (1) defendant knowingly distributed methamphetamine; and

23   (2) defendant knew it was methamphetamine or some other federally

24   controlled substance.

25      7.   Defendant understands that for defendant to be subject to

26   the statutory maximum and statutory minimum sentences set forth below

27   for Count Two, the government must prove beyond a reasonable doubt

28   that the distribution of methamphetamine charged in Count Two

1  involved at least 50 grams of methamphetamine.  Defendant admits that

2  the charged crime involved at least 50 grams of methamphetamine.

3      8.  Defendant understands that for defendant to be guilty of

4  the crime charged in Count Three, that is, Conspiracy to Defraud the

5  Government With Respect to Claims, in violation of Title 18, United

6  States Code, Section 286, the following must be true: (1) defendant

7  and at least one other person made an agreement to commit the crime

8  of obtaining payment with respect to false claims; (2) defendant knew

9  the unlawful purpose of the agreement and joined in it with the

10 intent to further the unlawful purpose; and (3) the agreement was to

11 defraud the United States, or any department or agency thereof, by

12 obtaining or aiding to obtain the payment or allowance of any claim

13 based on a false, fictitious or fraudulent material representation.

14     9.  Defendant understands that for defendant to be guilty of

15 the crime charged in Counts Four and Five, that is, Mail Fraud, in

16 violation of Title 18, United States Code, Section 1341, the

17 following must be true: (1) defendant knowingly participated in a

18 scheme or plan to defraud, or a scheme or plan for obtaining money or

19 property by means of false or fraudulent pretenses, representations,

20 or promises; (2) the statements made or facts omitted as part of the

21 scheme were material; that is, they had a natural tendency to

22 influence, or were capable of influencing, a person to part with

23 money or property; (3) defendant acted with the intent to defraud;

24 that is, the intent to deceive and cheat; and (4) defendant used, or

25 caused to be used, the mails to carry out or attempt to carry out an

26 essential part of the scheme.  Defendant further understands that for

27 defendant to be guilty of the crime charged, that is, aiding and

28 abetting Mail Fraud, in violation of Title 18, United States Code,

7

Section 1341 and 2(a), the following must be true: (1) someone else committed the crime of mail fraud; (2) defendant aided, counseled, commanded, induced, or procured that person with respect to at least one element of the crime of mail fraud; (3) defendant acted with the intent to facilitate the crime of mail fraud; and (4) defendant acted before the crime of mail fraud was completed.

10.   Defendant understands that for defendant to be guilty of the crime charged in Counts Six and Seven, that is, Possession of Fifteen or More Unauthorized Access Devices, in violation of Title 18, United States Code, Section 1029(a)(3), the following must be true: (1) defendant knowingly possessed at least fifteen unauthorized access devices at the same time; (2) defendant knew that the devices were unauthorized; (3) defendant acted with the intent to defraud; and (4) defendant's conduct in some way affected commerce between one state and another state, or between a state of the United States and a foreign country.

<u>PENALTIES AND RESTITUTION</u>

11.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 21, United States Code, Section 846, that is, Conspiracy to Distribute Methamphetamine and Fentanyl, as charged in Count One, is: lifetime imprisonment; a lifetime period of supervised release; a fine of $10,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii), that is, Distribution of Methamphetamine, as charged in Count Two is: lifetime imprisonment; a

lifetime period of supervised release; a fine of $10,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

13.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 286, that is, Conspiracy to Defraud the Government With Respect to Claims, as charged in Count Three, is: 10 years of imprisonment; 3 years of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

14.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1341, that is, Mail Fraud, as charged in Counts Four and Five, is: 30 years of imprisonment; 5 years of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

15.  Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1029(a)(3), that is, Possession of Fifteen or More Unauthorized Access Devices, as charged in Counts Six and Seven, is: 10 years of imprisonment; 3 years of supervised released; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

16.  Defendant understands that the statutory mandatory minimum sentence that the Court must impose for a violation of Title 21, United States Code, Section 846, as charged in Count One, is: 10

1    years of imprisonment, followed by a five-year period of supervised

2    release, and a mandatory special assessment of $100.

3        17.  Defendant understands that the statutory mandatory minimum

4    sentence that the Court must impose for a violation of Title 21,

5    United States Code, Section 841(a)(1), (b)(1)(A)(viii), as charged in

6    count Two is: 10 years of imprisonment, followed by a five-year

7    period of supervised release, and a mandatory special assessment of

8    $100.

9        18.  Defendant understands, therefore, that the total maximum

10   sentence for all offenses to which defendant is pleading guilty is: a

11   lifetime of imprisonment; a lifetime period of supervised release; a

12   fine of $22,750,000 or twice the gross gain or gross loss resulting

13   from the offenses, whichever is greatest; and a mandatory special

14   assessment of $700.

15       19.  Defendant understands that under 21 U.S.C. § 862a,

16   defendant will not be eligible for assistance under state programs

17   funded under the Social Security Act or Federal Food Stamp Act or for

18   federal food stamp program benefits, and that any such benefits or

19   assistance received by defendant's family members will be reduced to

20   reflect defendant's ineligibility.

21       20.  Defendant understands that defendant will be required to

22   pay full restitution to the victim(s) of the offenses to which

23   defendant is pleading guilty.  Defendant agrees that, in return for

24   the USAO's compliance with its obligations under this agreement, the

25   Court may order restitution to persons other than the victim(s) of

26   the offenses to which defendant is pleading guilty and in amounts

27   greater than those alleged in the counts to which defendant is

28   pleading guilty.  In particular, defendant agrees that the Court may

10

1  order restitution to any victim of any of the following for any
2  losses suffered by that victim as a result: (a) any relevant conduct,
3  as defined in U.S.S.G. § 1B1.3, in connection with the offenses to
4  which defendant is pleading guilty; and (b) any charges not
5  prosecuted pursuant to this agreement as well as all relevant
6  conduct, as defined in U.S.S.G. § 1B1.3, in connection with those
7  charges.  The parties currently believe that the applicable amount of
8  restitution is approximately $6,000,000 or less, but recognize and
9  agree that this amount could change based on facts that come to the
10  attention of the parties prior to sentencing.

11      21.  Defendant understands that supervised release is a period
12  of time following imprisonment during which defendant will be subject
13  to various restrictions and requirements.  Defendant understands that
14  if defendant violates one or more of the conditions of any supervised
15  release imposed, defendant may be returned to prison for all or part
16  of the term of supervised release authorized by statute for the
17  offense that resulted in the term of supervised release.

18      22.  Defendant understands that, by pleading guilty, defendant
19  may be giving up valuable government benefits and valuable civic
20  rights, such as the right to vote, the right to possess a firearm,
21  the right to hold office, and the right to serve on a jury.
22  Defendant understands that he is pleading guilty to a felony and that
23  it is a federal crime for a convicted felon to possess a firearm or
24  ammunition.  Defendant understands that the convictions in this case
25  may also subject defendant to various other collateral consequences,
26  including but not limited to revocation of probation, parole, or
27  supervised release in another case and suspension or revocation of a
28  professional license.  Defendant understands that unanticipated

1  collateral consequences will not serve as grounds to withdraw

2  defendant's guilty pleas.

3        23.   Defendant and his counsel have discussed the fact that, and

4  defendant understands that, if defendant is not a United States

5  citizen, the conviction in this case makes it practically inevitable

6  and a virtual certainty that defendant will be removed or deported

7  from the United States.   Defendant may also be denied United States

8  citizenship and admission to the United States in the future.

9  Defendant understands that while there may be arguments that

10 defendant can raise in immigration proceedings to avoid or delay

11 removal, removal is presumptively mandatory and a virtual certainty

12 in this case.   Defendant further understands that removal and

13 immigration consequences are the subject of a separate proceeding and

14 that no one, including his attorney or the Court, can predict to an

15 absolute certainty the effect of his convictions on his immigration

16 status.   Defendant nevertheless affirms that he wants to plead guilty

17 regardless of any immigration consequences that his pleas may entail,

18 even if the consequence is automatic removal from the United States.

19                              FACTUAL BASIS

20       24.   Defendant admits that defendant is, in fact, guilty of the

21 offenses to which defendant is agreeing to plead guilty.   Defendant

22 and the USAO agree to the statement of facts provided below and agree

23 that this statement of facts is sufficient to support pleas of guilty

24 to the charges described in this agreement and to establish the

25 Sentencing Guidelines factors set forth in paragraph 26 below but is

26 not meant to be a complete recitation of all facts relevant to the

27 underlying criminal conduct or all facts known to either party that

28 relate to that conduct.

1

2

3   Drug Conspiracy

4        Beginning on a date unknown and continuing through on or about

5   March 3, 2021, in Los Angeles and Orange Counties, within the Central

6   District of California, defendant, together with co-conspirators,

7   conspired with each other to knowingly and intentionally distribute

8   methamphetamine and fentanyl.

9        Specifically, on November 15, 2019, defendant sent a package

10  containing approximately 449.6 grams of actual methamphetamine via

11  Federal Express from a Fed Ex store in West Covina, California to a

12  company called "Clear Point Logistics" at the address of a UPS Store

13  in Hawaii.  The following day, November 16, 2019, defendant returned

14  to the Fed Ex store in West Covina, where he sent a package

15  containing fentanyl via Federal Express to "Clear Point Logistics" at

16  the same UPS Store in Hawaii.

17       Two days later, on November 18, 2019, defendant texted

18  screenshots of the Fed Ex tracking numbers for both packages, which

19  contained the shipment information and estimated delivery date, to a

20  co-conspirator in Hawaii.  Defendant also instructed the co-

21  conspirator via text message to transfer money to defendant to pay

22  for the drugs contained in the packages.

23       The Hawaiian co-conspirator arrived at the UPS Store in Hawaii

24  on November 18, 2019 to pick up the package containing

25  methamphetamine with the intent to transport it to additional co-

26  conspirators in Hawaii.  The co-conspirator was arrested by law

27  enforcement, who seized both of the drug packages that defendant

28  shipped.

1    In furtherance of the conspiracy to distribute drugs, on
2  June 22, 2020, defendant incorporated "Clear Point Logistics LLC" as
3  a limited liability company in the State of California, using
4  documents prepared through LegalZoom.  Approximately three weeks
5  later, on July 16, 2020, defendant rented a warehouse, located in La
6  Habra, California, on behalf of "Clear Point Logistics LLC" (the "La
7  Habra Warehouse").  At the La Habra Warehouse, defendant maintained
8  various equipment and materials for the manufacture and distribution
9  of controlled substances, including pill presses and dies, pill
10 bottles, scales, and various binding agents.  Defendant also
11 maintained a marijuana grow operation at the La Habra Warehouse.
12    At all relevant times, defendant knew the substances he was
13 distributing that are discussed above were controlled substances.
14 <u>Tax Offenses</u>
15    Beginning on or before March 27, 2020, in Los Angeles County,
16 within the Central District of California, defendant, together with
17 co-conspirators, conspired with each other to defraud the United
18 States through the payment of false and fraudulent claims for tax
19 refunds.  Specifically, defendant and co-conspirators would obtain
20 the names and social security numbers of individuals, who were
21 victims of identity theft.  Defendant, and the co-conspirators, would
22 then prepare and file false and fraudulent income tax returns using
23 falsified information.  The fraudulent tax returns would include
24 false information in order to qualify for Economic Impact Payments
25 ("EIP").  Defendant, and his co-conspirators, would list bank
26 accounts that defendant and the co-conspirators controlled on the
27 fraudulent returns, as the bank accounts to which the electronic
28 payment for the EIP should be made.  Through this scheme, defendant,

14

1   together with his co-conspirators, caused at least 297 fraudulent tax

2   returns to be filed with the Internal Revenue Service, which sought

3   more than $356,400 in fraudulent EIP from the United States.

4        In furtherance of this conspiracy, defendant caused the filing

5   of fraudulent tax returns in the name of victims G.H. and H.S.K. on

6   April 15, 2020.  Both of these fraudulent tax returns claimed EIP in

7   the amount of $1,200 each and listed defendant's bank account, a

8   Bancorp Bank Account ending in 6759, as the bank account to which the

9   claimed EIP should be paid.

10       Defendant filed these false tax returns knowing that they were

11  premised on false material information about the taxpayer, including

12  that the taxpayer authorized the tax return and they were eligible

13  for EIP.  Defendant submitted the false tax returns with the intent

14  to defraud, that is, the intent to deceive the United States to

15  provide EIP and other tax refund money to bank accounts controlled by

16  defendant, and for which he knew he was not entitled.

17  EDD Offenses

18       From May 2020 to March 2021, defendant and his co-conspirators

19  submitted approximately 459 fraudulent unemployment insurance ("UI")

20  claims to the California Employment Development Department ("EDD"),

21  knowing that the statements made in support of those claims were

22  materially false.  Defendant used the names, social security numbers,

23  dates of birth, and other personally identifiable information ("PII")

24  of California state prison inmates and others to submit UI claims to

25  the EDD as if those persons were submitting the claims themselves.

26  Defendant had received the inmates' information from various sources,

27  including internet websites.  Defendant knew that inmates were

28  ineligible for UI benefits under the EDD's requirements because they

were unable and unavailable to work and not actively seeking
employment due to their incarceration.

Defendant used the PII of inmates and non-inmates, which he and
his co-conspirators obtained, to submit online applications for UI
benefits on the EDD website.  Defendant falsely represented to the
EDD via online UI benefits applications that the inmates and others
were unemployed because of the COVID-19 pandemic and eligible to
receive benefits due to the COVID-19 pandemic, a presidentially
declared disaster under the Robert T. Stafford Disaster and Relief
Emergency Assistance Act.  Defendant also knowingly entered false
occupations for each inmate and non-inmate in UI benefits
applications and created various e-mail addresses so that he could
monitor the status of the applications.  Defendant knowingly listed
false mailing addresses, including mailing addresses of defendant's
current and former apartments, on the UI benefits applications so
that the EDD payments and debit cards would be sent to those
addresses, as if directed by the applicant for whom the UI claim was
submitted.

For example, on May 30, 2020, defendant filed an online UI
benefits application using inmate W.B.'s name, date of birth, and
social security number.  The application reported that W.B. lost work
due to COVID-19 and reported his annual income as $72,000 before his
loss of employment.  The application listed his last day of work as
May 23, 2020, however, California prison records show that W.B. has
been incarcerated since 2017.  Based on defendant's fraudulent
submission of the application, on June 5, 2020, Bank of America
("BofA") mailed an electronic bill payment ("EBP") debit card in
W.B.'s name to defendant's apartment, located at 1039 South Hobart

Boulevard, Unit 214, Los Angeles, California 90006 (the "Hobart
Apartment").  BofA records show that W.B.'s card was used to make
several transactions.  BofA surveillance video shows defendant and
others making multiple cash withdrawals using W.B.'s card.

On July 4, 2020, defendant filed an online UI benefits
application using inmate I.H.'s name, date of birth, and social
security number.  The application reported that I.H. lost work due to
COVID-19 and reported his annual income as $72,000 before his loss of
employment.  The application listed his last day of work as June 27,
2020, however, California prison records show that I.H. has been
incarcerated since 2015.  Based on defendant's fraudulent submission
of the application, on July 10, 2020, BofA mailed an EBP in I.H.'s
name to the address of defendant's former apartment, 951 South Beach
Boulevard, Unit A1012, La Habra, California 90631.  BofA records show
that I.H.'s card was used to make several transactions, including
approximately 20 cash withdrawals totaling $20,003.  BofA
surveillance video shows defendant and others making multiple cash
withdrawals using I.H.'s card.

In all, defendant and his co-conspirators filed at least 459
fraudulent UI claims.  Each of these UI claims was premised on false
material information about the inmates and other persons, resulting
in a total of amount of claimed UI benefits of approximately
$5,458,050.  Defendant filed these fraudulent UI claims with the
intent to defraud, that is, the intent to deceive the EDD to provide
UI benefits to persons ineligible to receive them and to direct the
EBP debit cards and payments to be sent to addresses where the
defendant or co-conspirators could obtain them.

November 15, 2020 Traffic Stop

On November 15, 2020, the La Habra Police Department stopped defendant for multiple traffic violations.  The traffic stop occurred at approximately 12:55 a.m., as defendant was leaving the La Habra Warehouse.  Inside the car, officers found approximately 22.04 grams of actual methamphetamine, a digital scale, and methamphetamine residue.  At the time, defendant knew he possessed this methamphetamine and he possessed it with the intent to distribute it to another person.

In addition to the drugs, officers found 16 BofA EBP cards in the names of people other than defendant in defendant's backpack, including a card belonging to inmate W.B.  Law enforcement tracked these 16 cards to fraudulent applications for UI benefits that defendant and his co-conspirators submitted to EDD.  Defendant did not have permission from any one the individuals whose names were listed on these 16 cards to possess their card.  Defendant further acknowledges that his possession of these EBP cards affected interstate commerce.  Officers also seized $26,778 in cash from defendant's car during the search.

Execution of Federal Search Warrants on March 3, 2021

On March 3, 2021, federal agents executed federal search warrants at three locations under defendant's control, including defendant's apartment, located at 1200 South Figueroa Street, Unit W3124, Los Angeles, CA 90015 (the "DTLA Apartment"), the La Habra Warehouse, and the Hobart Apartment.

Federal agents found approximately 34.93 grams of actual methamphetamine in defendant's DTLA apartment.  Agents also found dozens of EDD letters and mailings at the DTLA Apartment, and a

notebook marked "stimulus scheme" which contained approximately 405 different Edward Kim identities, complete with those victims' PII and addresses. Defendant did not have permission to possess any of the individuals whose names and PII were listed in the notebook. Defendant's possession of these persons' PII affected interstate commerce. In addition, agents found two polymer P80 jigs, an empty slide box, and an empty package for a Glock-style tactical slide stop in a safe within defendant's apartment. A Glock P80 lookalike gun, bearing no serial number (commonly referred to as a "ghost gun"), was later found in a toolbox at the La Habra Warehouse in April 2021.

At the La Habra Warehouse, agents found more EDD paperwork, ATM withdrawal receipts, and other EDD materials, and approximately 295.62 grams of actual methamphetamine.

At all relevant times, defendant knew the substances he possessed on March 3, 2021, were controlled substances and he possessed them with the intent to distribute them to another person.

SENTENCING FACTORS

25. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds

appropriate between the mandatory minimum and the maximum set by statute for the crimes of conviction.

26. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| GROUP UNIT 1: Drug Conspiracy and Distribution (Counts One through Two) | | |
|---|---|---|
| Base Offense Level:<br><br>- Between 500 grams and 1.5 kilograms of actual methamphetamine | 34 | U.S.S.G. § 2D1.1(a)(5), (c)(3) |
| Specific Offense Characteristics:<br><br>- Maintained a premises for the purpose of manufacturing or distributing controlled substances | +2 | U.S.S.G. § 2D1.1(b)(12) |
| Offense Level | 36 | |

| GROUP UNIT 2: Conspiracy to Defraud the Government, Mail Fraud, and Possession of Fifteen or More Unauthorized Access Devices (Counts Three Through Seven) | | |
|---|---|---|
| Base Offense Level:<br><br>- Offense has a statutory maximum sentence of 20 years or more | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Specific Offense Characteristics:<br><br>- Loss amount over $3,500,000 and less than $9,500,000 | +18 | U.S.S.G. § 2B1.1(b)(1)(J) |
| - More than 10 victims | +2 | U.S.S.G. § 2B1.1(b)(2)(A) |
| - Defendant derived more than $1,000,000 in gross receipts | +2 | U.S.S.G. § 2B1.1(b)(17)(A) |
| Offense Level | 29 | |

| Multiple Counts | | |
|---|---|---|
| Higher Offense Level (Group Unit 1) | 36 | U.S.S.G. § 3D1.4(a) |
| Group Unit 2 counted as one-half unit because it is between 5 to 8 levels less serious than Group Unit 1 | 1 | U.S.S.G. § 3D1.4(b) |
| Offense Level | 37 | |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2.  If defendant's offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

34.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

35.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

36.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be

21

1   represented by counsel -- and if necessary have the Court appoint

2   counsel -- at every other stage of the proceeding.

3          d.   The right to be presumed innocent and to have the

4   burden of proof placed on the government to prove defendant guilty

5   beyond a reasonable doubt.

6          e.   The right to confront and cross-examine witnesses

7   against defendant.

8          f.   The right to testify and to present evidence in

9   opposition to the charges, including the right to compel the

10  attendance of witnesses to testify.

11         g.   The right not to be compelled to testify, and, if

12  defendant chose not to testify or present evidence, to have that

13  choice not be used against defendant.

14         h.   Any and all rights to pursue any affirmative defenses,

15  Fourth Amendment or Fifth Amendment claims, and other pretrial

16  motions that have been filed or could be filed.

17                  WAIVER OF APPEAL OF CONVICTION

18    37.   Defendant understands that, with the exception of an appeal

19  based on a claim that defendant's guilty pleas were involuntary, by

20  pleading guilty defendant is waiving and giving up any right to

21  appeal defendant's convictions on the offenses to which defendant is

22  pleading guilty.  Defendant understands that this waiver includes,

23  but is not limited to, arguments that the statutes to which defendant

24  is pleading guilty are unconstitutional, and any and all claims that

25  the statement of facts provided herein is insufficient to support

26  defendant's pleas of guilty.

27

28

                                22

1    <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

2        38.  Defendant agrees that, provided the Court imposes a term of

3    imprisonment within or below the range corresponding to an offense

4    level of 35 and the criminal history category calculated by the

5    Court, defendant gives up the right to appeal all of the following:

6    (a) the procedures and calculations used to determine and impose any

7    portion of the sentence; (b) the term of imprisonment imposed by the

8    Court; (c) the fine imposed by the Court, provided it is within the

9    statutory maximum; (d) to the extent permitted by law, the

10   constitutionality or legality of defendant's sentence, provided it is

11   within the statutory maximum; (e) the amount and terms of any

12   restitution order, provided it requires payment of no more than

13   $6,000,000; (f) the term of probation or supervised release imposed

14   by the Court, provided it is within the statutory maximum; and

15   (g) any of the following conditions of probation or supervised

16   release imposed by the Court: the conditions set forth in Second

17   Amended General Order 20-04 of this Court; the drug testing

18   conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the

19   alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

20       39.  Defendant also gives up any right to bring a post-

21   conviction collateral attack on the convictions or sentence,

22   including any order of restitution, except a post-conviction

23   collateral attack based on a claim of ineffective assistance of

24   counsel, a claim of newly discovered evidence, or an explicitly

25   retroactive change in the applicable Sentencing Guidelines,

26   sentencing statutes, or statutes of conviction.  Defendant

27   understands that this waiver includes, but is not limited to,

28   arguments that the statutes to which defendant is pleading guilty are

1    unconstitutional, and any and all claims that the statement of facts
2    provided herein is insufficient to support defendant's pleas of
3    guilty.

4        40.  The USAO agrees that, provided (a) all portions of the
5    sentence are at or above the statutory minimum and at or below the
6    statutory maximum specified above and (b) the Court imposes a term of
7    imprisonment within or above the range corresponding to an offense
8    level of 35 and the criminal history category calculated by the
9    Court, the USAO gives up its right to appeal any portion of the
10   sentence, with the exception that the USAO reserves the right to
11   appeal the amount of restitution ordered if that amount is less than
12   $6,000,000.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

14       41.  Defendant agrees that if, after entering guilty pleas
15   pursuant to this agreement, defendant seeks to withdraw and succeeds
16   in withdrawing defendant's guilty pleas on any basis other than a
17   claim and finding that entry into this plea agreement was
18   involuntary, then (a) the USAO will be relieved of all of its
19   obligations under this agreement; and (b) should the USAO choose to
20   pursue any charge or any civil, administrative, or regulatory action
21   that was either dismissed or not filed as a result of this agreement,
22   then (i) any applicable statute of limitations will be tolled between
23   the date of defendant's signing of this agreement and the filing
24   commencing any such action; and (ii) defendant waives and gives up
25   all defenses based on the statute of limitations, any claim of pre-
26   indictment delay, or any speedy trial claim with respect to any such
27   action, except to the extent that such defenses existed as of the
28   date of defendant's signing this agreement.

1                    RESULT OF VACATUR, REVERSAL OR SET-ASIDE

2        42.   Defendant agrees that if any count of conviction is

3   vacated, reversed, or set aside, the USAO may: (a) ask the Court to

4   resentence defendant on any remaining counts of conviction, with both

5   the USAO and defendant being released from any stipulations regarding

6   sentencing contained in this agreement, (b) ask the Court to void the

7   entire plea agreement and vacate defendant's guilty pleas on any

8   remaining counts of conviction, with both the USAO and defendant

9   being released from all their obligations under this agreement, or

10  (c) leave defendant's remaining convictions, sentence, and plea

11  agreement intact.  Defendant agrees that the choice among these three

12  options rests in the exclusive discretion of the USAO.

13                       EFFECTIVE DATE OF AGREEMENT

14       43.   This agreement is effective upon signature and execution of

15  all required certifications by defendant, defendant's counsel, and an

16  Assistant United States Attorney.

17                          BREACH OF AGREEMENT

18       44.   Defendant agrees that if defendant, at any time after the

19  signature of this agreement and execution of all required

20  certifications by defendant, defendant's counsel, and an Assistant

21  United States Attorney, knowingly violates or fails to perform any of

22  defendant's obligations under this agreement ("a breach"), the USAO

23  may declare this agreement breached.  All of defendant's obligations

24  are material, a single breach of this agreement is sufficient for the

25  USAO to declare a breach, and defendant shall not be deemed to have

26  cured a breach without the express agreement of the USAO in writing.

27  If the USAO declares this agreement breached, and the Court finds

28  such a breach to have occurred, then: (a) if defendant has previously