E. MARTIN ESTRADA
United States Attorney
ANNAMARTINE SALICK
Assistant United States Attorney
Chief, National Security Division
ANDREW M. ROACH (Cal. Bar No. 293375)
Assistant United States Attorney
Cyber & Intellectual Property Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0306
     Facsimile: (213) 894-2927
     E-mail:   andrew.roach@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                 UNITED STATES DISTRICT COURT

              FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,          No. 8:21-CR-00041-JVS

          Plaintiff,               GOVERNMENT'S RESPONSE TO DEFENDANT
                                   EDWARD KIM'S OBJECTIONS TO THE
          v.                       PRESENTENCE REPORT; EXHIBITS 1-4

EDWARD KIM,                        Hearing Date: March 6, 2023
                                   Hearing Time: 9:00 a.m.
          Defendant.               Location:     Courtroom of the
                                                 Hon. James V. Selna

     Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorney Andrew M. Roach,

hereby files its response to defendant Edward Kim's objections to the

Presentence Report ("PSR").

## I.   INTRODUCTION

The government continues to recommend defendant Edward Kim be sentenced to the low end of the applicable guidelines, that is, 292 months of imprisonment, followed by five years of supervised release. This is consistent with the parties' plea agreement.  While the government continues to believe this is an appropriate sentence, the government submits this memorandum to respond to defendant's objections to the PSR.

## II.  GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO THE PSR

### A.   Defendant's Pending Charges Are an Aggravating Factor

The PSR identifies a host of other crimes defendant has been charged with or arrested for, including possession of controlled substances, possession of methamphetamine, identity theft, possession of personal identifying information, failures to appear, and even threatening crime with intent to terrorize.  PSR ¶¶ 115-130.  The probation officer's recommendation considers these offenses aggravating factors, see Dkt. 42 at 8.

Defendant, without evidence or authority, asserts that the Court cannot consider these pending charges or arrests as there may not be sufficient evidence to support them or the state may not pursue them. But this Court is permitted to consider all of defendant's relevant conduct and his entire past when determining the sentence:  "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."  18 U.S.C. § 3661; see also U.S.S.G. §§ 1B1.3, 1B1.4, 1B1.3 Background ("Conduct that is not formally charged or is not an element of the offense of

conviction may enter into the determination of the applicable guideline sentencing range.").  The probation office and this Court can, and should consider, defendant's full criminal history.  This is true regardless of whether the pending charges result in additional convictions, which, in all likelihood, they will not given defendant's anticipated federal sentence here.  Accordingly, the Court can consider this information if it deems appropriate.

**B.    The Sentences of the Hawaiian Co-Conspirators Have Little Relevance to the Sentencing Disparity Analysis**

Defendant objects to the lack of information about the sentences of the Hawaiian co-conspirators in the PSR.  Defendant, however, fails to show such information is relevant to determining defendant's sentence or that the Hawaiian co-conspirators were found guilty of conduct similar to the breadth of defendant's extensive crime spree and that they have similar criminal records—-which would be necessary before the Court can consider them.

Under 18 U.S.C. § 3553(a)(6), a sentencing court should consider the "need to avoid unwarranted sentence disparities among <u>defendants with similar records</u> who have been found guilty of <u>similar conduct</u>." 18 U.S.C. § 3553(a)(6) (emphases added).  Here, the Hawaiian co-conspirators' crimes pale in comparison to defendant's criminal conduct.  As the PSR details, the Hawaiian co-conspirators were arrested in November 2019.  PSR ¶ 20.  Defendant was not arrested until March 2021, a year-and-a-half later.  PSR ¶ 42.  During that time, defendant engaged in numerous crimes.  He operated a drug warehouse and engaged in a multi-million-dollar EDD scheme, <u>see</u> PSR ¶¶ 21-50, crimes that the Hawaiian co-conspirators were not involved with at all.  Accordingly, the Hawaiian co-conspirators are not

similarly situated to defendant and therefore their sentences are not relevant.

The best way to avoid sentencing disparities is to use the guidelines which is why the government continues to advocate for a guideline sentence in this case.

**C.   Defendant Possessed the Ghost Gun at the La Habra Warehouse and Should Receive a Two-Level Increase Under U.S.S.G. § 2D1.1(b)(1)**

The government agrees it must prove defendant's possession of a firearm by a preponderance of evidence before the Court can apply the two-level increase under § 2D1.1(b)(1).  United States v. Cazares, 121 F.3d 1241, 1244 (9th Cir. 1997).  This requires the government show defendant both possessed the gun and it was connected to the drug offenses.  Both are easily met here by the required preponderance of the evidence.

As the PSR correctly notes a loaded Glock P80 ghost gun was found at the La Habra warehouse defendant rented and operated for the exclusive use as a drug factory.  PSR ¶¶ 66-67; see also Ex. 1 (4/14/21 La Habra Police Report documenting the seizure of the Glock P80 ghost gun from La Habra warehouse).  Inside the warehouse, agents also found the other instruments of defendant's drug trade, including 330 marijuana plants, approximately 620 grams of methamphetamine, 18 pill press dies, two pill pressers, and one pill mixer.  PSR ¶¶ 47, 66-67.[1]  This ghost gun matches the two polymer P80 jigs, empty slide

---

[1] The PSR stated that approximately 620 grams of methamphetamine was found at the La Habra Warehouse based on the gross weight referenced in the investigative report.  PSR ¶ 47.  After testing and removal of packaging, the final weight was 295.62 grams of actual methamphetamine as reflected in the plea agreement.  See Dkt. 36 at 19.  This does not change defendant's base offense level of 34 under U.S.S.G. § 2D1.1(a)(5),(c)(4) because it is based on the combined

*(footnote cont'd on next page)*

3

box, and empty tactical slide stop package for a Glock-style gun found inside a locked safe in defendant's apartment.  Plea Agreement (Dkt. 36) at 19; see also Ex. 2 (Photos from defendant's downtown Los Angeles apartment); Ex. 3 (HSI Report on search warrant execution at defendant's downtown Los Angeles apartment).[2]  Defendant's text messages further prove defendant's possession of the ghost gun.  For example, text messages dated from September 6, 2020 found on an Apple iMac seized from the warehouse show defendant discussing his gun with his then-partner:

> [Partner]:    Hey but don't worry guess what I'm gonna be there soon and I'm going to show you what I have and then you can show me what you got
>
> [DEFENDANT]:  I got my pistol that's what I got
>
> . . .
>
> [Partner]:    Ur pistol is at warehpuse
>
> [DEFENDANT]:  Where the fuck is my car . . .  No my pistol is with me

Ex. 4 at 6, 7 (Text messages dated 9/6/2020 extracted from Apple iMac found at La Habra Warehouse).

Taken as a whole, all of these facts are sufficient to show defendant's possession of the ghost gun and its connection to his drug trade at the La Habra warehouse to trigger the enhancement. Such a conclusion is consistent with § 2D1.1(b)(1) and its application note, which makes clear these facts would qualify:  "The

---

drug weight of at least 500 grams but less than 500 grams of actual methamphetamine.

[2] Numerous drugs were also found at defendant's downtown Los Angeles apartment, including 334.5 grams of suspected methamphetamine inside a bowl, 5.6 grams of methamphetamine, 76.5 grams of suspected cocaine, 618 grams of suspected Xanax.  PSR ¶ 46.

4

1  enhancement should be applied if the weapon was present, unless it is
2  clearly improbable that the weapon was connected with the offense."
3  U.S.S.G § 2D1.1(b)(1), note 11(a).

4      Defendant, primarily relying on Cazares, objects to the
5  enhancement.  But Cazares does not support his argument.  There, the
6  government failed to prove the defendant possessed the guns at issue
7  when the defendant occupied the residence with several other people,
8  and the government had not shown the guns were found in the bedroom
9  occupied by the defendant or that defendant even knew the guns
10 existed.  Cazares, 121 F.3d at 1244.

11     Unlike Cazares, this is not a case where other individuals who
12 might have owned the firearm were present or where there is
13 insufficient evidence to show defendant knew about the firearm's
14 existence.  See United States v. Torres, 162 F.3d 1171 (9th Cir.
15 1998) (distinguishing Cazares because "in that case non-conspirators
16 were present in the apartment where the guns were found, suggesting
17 that they, and not the appellant, may have possessed the firearms").
18 Here, the evidence shows defendant lived at the downtown Los Angeles
19 apartment alone, and his own text messages show he knew about the
20 gun.  In fact, defendant does not even argue that others might have
21 possessed the gun or that he lacked knowledge of it.  Nor could he
22 seriously do so when he readily concedes the molds and materials to
23 build the ghost gun were found in a locked safe in an apartment where
24 he lived alone, the gun was found in a warehouse he rented, and he
25 exchanged multiple text messages referencing his gun.  See Ex. 2; PSR
26 ¶ 47; Ex. 4.

27     Instead, defendant argues the government has failed to show a
28 connection between his ghost gun and his shipment of methamphetamine

to Hawaii in November 2019.  Def.'s Sentencing Position (Dkt. 45) at

12.  But this argument takes an extremely narrow view of defendant's

relevant criminal conduct.  It attempts to connect the ghost gun to

one specific drug transaction rather than defendant's course of drug

dealing.  But neither the probation officer nor the government assert

the ghost gun played a role in defendant's shipping of

methamphetamine to Hawaii in November 2019.  See PSR ¶¶  16-19.  Nor

does it need to for the enhancement to apply under the guidelines.

Rather, the ghost gun was found at the La Habra warehouse defendant

maintained as a drug factory, along with all the other instruments of

defendant's drug trade.  PSR ¶¶ 47, 66-67.  This ghost gun matched

the molds and materials defendant had locked in a safe at his

apartment where he lived alone.  This is more than sufficient to show

both defendant's possession of the gun and its connection to his drug

trade.  See United States v. Jingles, 64 F. App'x 82, 84 (9th Cir.

2003) (affirming § 2D1.1(b)(1) enhancement where evidence found at

defendant's residence sufficiently connected defendant to the

firearm).  Accordingly, the two-level enhancement under § 2D1.1(b)

applies.

**D.   Defendant is a Career Offender**

The Court need to resolve the issue of whether defendant is a

career offender if it adopts the offense level calculated in the PSR

because the applicable offense level of 38, before acceptance of

responsibility, is greater than the otherwise applicable career

offender guideline.  PSR ¶¶ 93-94.  In this case, the issue is moot

and it need not be resolved because it will not affect sentencing.

See Fed. R. Crim. P. 32(i)(3)(B).  However, if the Court finds the

contested two-level enhancement under § 2D1.1(b)(1) for the

possession of a firearm does not apply or the PSR's calculation of the guidelines is incorrect in another respect, then it must determine whether defendant is a career offender.

The PSR correctly determined defendant is a career offender based on his extensive criminal conduct.  PSR ¶¶ 91-94. Specifically, the PSR found defendant has two prior felony convictions for controlled substance offenses, namely, his 2014 conviction for the manufacture of a controlled substance, in violation of California Health & Safety Code Section 11379.6(a), PSR ¶ 104, and his 2019 conviction for possession of methamphetamine for sale, in violation of California Health & Safety Code Section 11378, PSR ¶ 111.  Both of these meet the definition of a "controlled substance offense" under the § 4B1.2(b) of the career offender guidelines as they both are "an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b).

Defendant asserts he is not a career offender because his conviction under California Health & Safety Code Section 11379.6(a) is not a drug trafficking offense.  But this is mixing apples and oranges, drug trafficking offenses with controlled substance offenses, and the guidelines with immigration law.  All are distinctly different.  The career offender guidelines' definition of "controlled substance offense" does not require the trafficking or commercial dealing of drugs, unlike other statutes, such as the

1   Immigration Naturalization Act, which defendant primarily relies.

2   Indeed, an offense can qualify as a "controlled substance offense"

3   under the guidelines even if the manufacture was for personal use, as

4   defendant suggests.  Such conduct plainly falls under the definition

5   of a "controlled substance offense" in § 4B1.2(b), because it is an

6   offense under state law, punishable by imprisonment for a term

7   exceeding one year, that prohibits the manufacture of a controlled

8   substance.  No commercial dealing or trafficking is required.

9        All of defendant's cited authorities are inapposite for this

10  reason.  They deal with immigration law or specific definitions of

11  drug trafficking crimes, where the determination of whether a crime

12  constitutes a drug trafficking crime is necessary.  See, e.g., Rendon

13  v. Mukasey, 520 F.3d 967, 974 (9th Cir. 2008) (determining whether

14  drug offense was the "illicit trafficking" of a controlled substance

15  under the Immigration and Naturalization Act); Lopez v. Gonzalez, 549

16  U.S. 47 (2006) (same); Cazarez-Gutierrez v. Ashcroft, 382 F.3d 905,

17  919 (9th Cir. 2004) (offense found not be an aggravated felony

18  because no trafficking element); United States v. Reyes-Mendoza, 665

19  F.3d 165, 166 (5th Cir. 2011) (California conviction did not qualify

20  as "drug trafficking offense" as specifically defined in U.S.S.G.

21  § 2L1.2).[3]  Indeed, most of defendant's authorities primarily rely on

22  the definition of "aggravated felony" under the Immigration and

23  Naturalization Act, which includes the "illicit trafficking in a

24  controlled substance . . . , including a drug trafficking crime."

25  8 U.S.C. § 1101(a)(43)(B) (emphases added).  Courts have interpreted

26

27        _____

28        [3] Notably, unlike the career offender guidelines which use the
    term "controlled substance offense," some guidelines, such as
    U.S.S.G. § 2L1.2, use and define the term "drug trafficking offense."

                                    8

this statutory phrase of trafficking to mean "some sort of commercial dealing."   Rendon, 520 F.3d at 974 (quoting Lopez, 549 U.S. 47). This requirement has no relevance when the guidelines' definition of "controlled substance offense" does not require a trafficking element under U.S.S.G. § 4B1.2(b).

Accordingly, defendant's argument that his Section 11379.6(a) conviction does not make him a career offender because it is not a drug trafficking offense fails.

Dated: February 26, 2023          Respectfully submitted,

                                  E. MARTIN ESTRADA
                                  United States Attorney

                                  ANNAMARTINE SALICK
                                  Assistant United States Attorney
                                  Chief, National Security Division


                                   /s/ Andrew M. Roach
                                  ANDREW M. ROACH
                                  Assistant United States Attorney

                                  Attorneys for Applicant
                                  UNITED STATES OF AMERICA